Joseph D. Martinec
MARTINEC, WINN, VICKERS & McElroy, P.C.
600 Congress Avenue, Ste. 500
Austin, TX 78701
(512) 476-0750
(512) 476-0753 Facsimile
martinec@mwvmlaw.com

Jerry Galow
GALOW & SMITH, P.C.
1204 Nueces Street
Austin, Texas 78702
(512) 481-0200
(512) 481-0250 Facsimile
jerry@galowlaw.com

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 13 |
| TIMOTHY FRAZIN, | § | |
|           Debtor. | § | CASE NO. 02-32351-bjh-13 |
| | § | |

| | | |
|---|---|---|
| TIMOTHY FRAZIN, | § | |
|           Plaintiff, | § | |
| | § | ADVERSARY NO. 08-3021-bjh |
| | § | |
| | § | |
| HAYNES AND BOONE, LLP | § | |
| GRIFFITH & NIXON, P.C., | § | |
| SCOTT GRIFFITH, NINA CORTELL, | § | |
| AND WARREN DODSON, | § | |
|           Defendants. | § | |

## PLAINTIFF TIMOTHY FRAZIN'S RESPONSE AND OBJECTIONS TO DEFENDANTS' MOTION FOR ATTORNEY FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. 3

I.      INTRODUCTION..................................................................... 5

II.     DEFENDANTS' PLEADINGS ARE INSUFFICIENT As A MATTER OF LAW.................................................................................. 6

     A.     HAYNES & BOONE'S PLEADINGS ARE INSUFFICIENT TO SUPPORT A COUNTERCLAIM........................................ 6

     B.     GRIFFITH & NIXON'S PLEADINGS ARE LIKEWISE INSUFFICIENT.................................................................... 8

III.     DEFENDANTS' AFFIDAVITS ARE INSUFFICIENT........................ 9

     A.     ROBIN PHELAN"S AFFIDAVIT.......................................... 10

     B.     SCOTT GRIFFITH"S AFFIDAVIT .....................................11

     C.     THE LAW REGARDING AFFIDAVITS................................12

IV.     DEFENDANST VARIOUS REQUESTS FOR ATTORNEYS FEES FAIL

     A.     DEFENDATS REQUESTS UNDER THE BANKRUPTCY CODE AND GENERAL ORDER 00-7 FAIL.......................................... 12

     B.     DEFENDANTS CLAIMS PURSUANT TO THE DTPA FAIL....... 17

     C.     DEFENDANTS CLAIMS UNDER THE TEXAS CIVIVL PRACTICE AND REMEDIES CODE CHPT. 38 FAIL................................19

V.      CONCLUSION...................................................................... 21

CERTIFICATE OF SERVICE............................................................. 22

2

## TABLE OF AUTHORITIES

**Page**

### CASES

*Andrews & Kurth L.L.P. v. Family Snacks (In re ProSnax Distribs.)*
   157 F.3d 414 (5th Cir. 1998)……………………………………………… 12

*Greenfield v. Suzuki Motor Co., Ltd.*
   776 F.Dupp. 698, 701 (E.D.N.Y. 1991)…………………………………….. 7

*In re Engman*
   389 B.R. 36, 46-48 (Bankr. W.D. MI 2008)………………………………... 13

*In re Intelogic Trace, Inc.*
   200 F.3d 382 (5th 2000)………………………………………………….. 5

*In re St. Rita's Assocs. Private Placement, L.P.*
   260 B.R. 650 (Bankr. WDNY 2001)……………………………………….. 13

*In re Teraforce Tech. Corp.*
   347 B.R. 838, 846 (Bankr. N.D. Tex. 2006)……………………………13, 14, 15

*Kaye v. Hughes & Luce, LLP*
   2007 U.S.Dist. LEXIS 50929, 48 Bankr. Ct. Dec. (LRP) 135
   (N.D. Tex. July 13, 2007)…………………………………………………... 12

### STATUTES AND RULES

11 U.S.C. § 330……………………………………………………………… 7, 13

Fed. R. Civ. P.(8)(a)(2)………………………………………………………… 6

Fed. R. Civ. P. 11……………………………………………………………… 13

Tex. Bus. Com. Code § 17.50(c)…………………………………………… 17, 18

Tex. Civ. Prac. & Rem. Code § 38………………………………………… 7, 20, 21

Tex. Civ. Prac. & Rem. Code § 38.001……………………………………7, 20, 21

Tex. Civ. Prac. & Rem. Code § 38.002……………………………………… 7, 20

Tex. Civ. Prac. & Rem. Code § 38.006……………………………………… 7

PLAINTIFF TIMOTHY FRAZIN files this response and objection to Defendants' Motion for Attorney Fees and Expenses.

## I.

## <u>INTRODUCTION</u>

In *Intelogic Trace, Inc.,* 200 F.3rd 382 (5th Cir. 2000) the 5th Circuit created a conundrum for Plaintiffs in bankruptcy court who feel that they may have been the victim of malpractice of malfeasance by their counsel. The would-be Plaintiff is forced to file an objection to a fee application within days of the application or forfeit any rights to legitimate claims. While Defendants ignore this quirk of fate unique to the Bankruptcy world (Fed.R.Civ.P. 1), the Court has reminded then repeatedly of the harsh reality for would-be Plaintiffs who harbor sincere doubts about the adequacy of their representation. Indeed, that conundrum was played out to full force and effect in this very matter when the Defendants filed and sought confirmation of their fees on as rapid a basis as allowed (taking the Court's opinion into account) leaving the Plaintiff with the absolute minimal amount of time to make his determination whether to object and on what grounds.

Unapologetically, the Defendants now claim that the Court should ignore the unique exigencies of *Intelogic Trace* and hold the Plaintiff accountable as if he had years to make a decision. Indeed, Mr. Phelan himself told the Court at a continuance hearing that it should proceed with a fee hearing so that Plaintiff's claims could be barred. Correctly, the Court declined such an invitation.

Ignoring this backdrop completely, Defendants ask this Court for what are essentially sanctions for Plaintiff having the temerity to believe that a reversal of an over

$7 million judgment for "no evidence" was the fault of the legal team. Coupling this with the fact that Plaintiff's opinions about the legal work done and the ethics of the Defendants' actions were backed by a former State Bar President (Spivey), a former lead prosecutor for the Texas State Bar (McCormack) and a former Chief Justice of the Dallas Court of Appeals (McGarry), serious doubt must be cast upon Defendants' allegations of any bad faith filing.

## II.

## DEFENDANTS' PLEADINGS ARE INSUFFICIENT AS A MATTER OF LAW

### A.  Haynes & Boone's Pleadings are Insufficient to Support a Counterclaim.

The entirety of Haynes & Boones' "Counterclaim" is set forth below:

> Haynes & Boone seeks its attorney's fees and costs incurred in connection with this proceeding pursuant to (a) section 330 of the Bankruptcy Code; (b) this Court's General Order No. 00-7, Standing Order Concerning Guidelines for Compensation and Expense Reimbursement for Professionals, For Early Disposition of Assets in Chapter 11 Cases and for Motions and Orders for Pertaining to Use of Cash Collateral and Post-Petition Financing, and Section I.F. of the Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals attached thereto; (c) Section 17.50(c) of the D.T.P.A.; and (d) Chapter 38 of the Texas Civil Practice and Remedies Code.

This is the one and only pleading asserted by Haynes & Boone as a basis for attorney's fees. This pleading fails to set forth any factual bases for attorneys' fees under any theory. Fed.R.Civ.P. 8(a)(2) states: "A pleading that states a claim for relief must contain: (2) a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Here Defendants set forth no claim for relief. They simply say, "Haynes & Boone seeks its attorneys fees and costs incurred pursuant to . . ." and set forth statutory references. Nowhere do the Defendants plead in even the broadest terms those facts or allegations which would give rise to Defendants' right to attorneys' fees. By way of

example, and not limitation, Defendants' claim they are entitled to attorneys' fees ". . . pursuant to . . . (d) Chapter 38 of the Tex.Civ.Prac. & Rem. Code." TxCPRC 38 is an entire chapter of code, some of which permits recovery of attorneys' fees under specific circumstances (§ 38.001 ), and some of which denies a right to attorneys' fees on certain contracts, (§ 38.006). Such a broad based pleading does not meet even the Fed.R.Civ.P. generous requirement of "general allegations." *Greenfield vs. Suzuki Motor Co., Ltd.* 776 F.Supp. 698, 701 (E.D.N.Y. 1991).

The limitations of Plaintiff's pleadings are obvious when one examines the elements for each and the fact that the Defendants' did not plea a single element, much less some consolidated form of them.

1)  Sec. 330 of the Bankruptcy Code:

    Allows for attorneys' fees for services rendered to the estate.

    Defendants never plead the services rendered <u>defending</u> their fee application were services <u>for</u> the estate requiring fees.

2)  General order 00-7:

    Allows additional fees for defending a frivolous objection to fees.

    Defendants never plead that Plaintiff's claims were frivolous.

3)  Sec. 17.50(c) of the DTPA:

    Allows fees for groundless, bad faith or harassing litigation under the DTPA.

    Defendants never plead the DTPA litigation or, any part thereof, was groundless, harassing or brought in bad faith nor did they specify which parts of the act plead fell within these parameters.

4)      Chapter 38 of the Tx.CPRC.

Chapter 38 of the TxCPRC, is just that, an entire chapter. Some of it sets out the times when attorneys' fees are recoverable on a contract claim (38.001); some the procedure to recover attorneys' fees on such a claim. (38.002). Still other parts set forth contracts not entitled to attorneys' fees. (38.006). Defendants never plead what part of the Code they were relying on, nor even generally plead the procedural requirements of (38.002), i.e. retention of an attorney, presentment and demand or refusal to pay. In fact, Haynes & Boone did not even plead the general phrase that "all conditions precedent had been met."[2].

These defects in pleading fail to put Plaintiff on notice of the specific bases for affirmative relief by Defendants. As Plaintiff was entitled to notice pleadings, all such claims for relief should be denied.

**B.      Griffith & Nixon's Pleadings are Likewise Insufficient.**

1)      Griffith & Nixon's Breach of Contract Claim.

Setting aside for the moment, the Court's specific rejection of a breach of contract claim in both its opinion and on the record at the last status conference, Griffith & Nixon's breach claim fails on its pleadings. While at least Griffith & Nixon went to the trouble to say the words that Plaintiff's objections were ". . . tantamount to the Debtor's breach of the contingency fee agreement . . .", Defendants' Griffith & Nixon and Scott Griffith never plead that

---

[2] Recognizing the Court explicity overruled Defendant Griffith & Nixon's breach of contract claim, the pleading argument is merely suspenders after the belt.

(1) they had retained counsel; (2) they had made demand; and, (3) that such demand was refused. (CPRC 38.002). Nor did Griffith & Nixon plead that all conditions precedent to collection of attorneys' fees had been met. As such, Defendants' claims for attorneys' fees fails on its pleadings.

2)      The other Griffith & Nixon claims for attorneys' fees.

The remaining claims of Griffith & Nixon fail for the reasons asset forth pertaining to Haynes & Boone's pleadings, supra., and those arguments are fully incorporated herein. Because Defendants' pleadings do not meet even the cursory requirements of FRCP (8)(2), the claims fail for lack of specificity.

### III.

### DEFENDANTS' AFFIDAVITS ARE INSUFFICIENT

Defendants' affidavits are conclusory and therefore insufficient. Under relevant federal law a conclusory affidavit or part thereof is considered no evidence on a point and must be disregarded. *Galindo v. Precision American Corp,* 754 F.2d 1212 @ 1216. This rule applies to the various affidavits on file before this Court and various portions must be stricken and given no right.

**A.**      **Robin Phelan's Affidavit.**

Robin Phelan's affidavit is conclusory and/or relies upon hearsay and Plaintiff moves to strike the following sections:

1.      Plaintiff objects to Exhibits A, B and C to the affidavit as they are hearsay and no proper predicate has been established;

2.    Plaintiff objects to Exhibit D, Statement of Ashley, as it does not even purport to set out the requirement for attorneys' fees in Texas of Federal Court;

3.    Plaintiff objects to Exhibit  Statement of Ammon Burton, as it does not even purport to set out the requirement for attorneys' fees in Texas or Federal Court;

4.    Plaintiff objects to Paragraph 25 as it is conclusory in that it does not describe any other case or work that was not done due to this case;

5.    Plaintiff objects to Paragraph 34 as it is conclusory;

6.    The firms "suggestion of a 33% reduction, as it is conclusory and does not set forth why the percentage is accurate;

7.    Plaintiff objects to Defendants' statement in Paragraph 35(b) that breach of fiduciary duty claims "permeated the whole case," as it is conclusory and does not explain in the least how the failure to include Mr. Cohen's testimony on the contract terms impacts Ms. Cortell's promise to be the principal attorney working on the case, for example.; and,

8.    Plaintiff objects to Paragraph 38 regarding reasonable and necessary is totally conclusory and insufficient to support an award of attorneys' fees.

**B.** **Scott Griffith's Affidavit.**

Scott Griffith's affidavit is conclusory and relies upon hearsay. Plaintiff

moves to strike the following sections:

1. Exhibit D – the firm's fee statement, as hearsay without an

   adequate foundation;

2. As a result of striking Exhibit D, paragraphs 8, 9 and 10 must also

   be stricken as they rely upon hearsay without an adequate

   foundation;

3. Plaintiff objects to Paragraph 19 as conclusory, no other work is

   identified as lost specifically;

4. Plaintiff objects to the last line of Paragraph 24 as conclusory;

5. Plailntiff objects to Paragraph 28 as conclusory;

6. Plaintiff objects to Paragraph 29, the last sentence containing 10%

   reduction as it is conclusory and gives neither the Plaintiff nor the

   court any valid methodology for creating the 10% number; and,

7. Plaintiff objects to Paragraph 30 of the affidavit as the 33%

   reduction number is conclusory, based on hearsay and is not based

   on any actual review of the billings in this case.

**C.** **The Law Regarding Affidavits.**

Affidavits must meet all the requirements of regular testimony. They must be

clear, concise, non-conclusory, and meet all other conditions of admissibility *Galindo, id.*

Defendants' affidavits clearly fail to do so in key respects. As a result the Court must strike them or the inadmissible portions.

## IV.

### DEFENDANTS' VARIOUS REQUESTS FOR ATTORNEYS' FEES FAIL.

#### A. Defendants' Requests Under Bankruptcy Code § 330 and General Order No. 00-7 Fail

Movants have argued that, under the authority of the General Order No. 00-7, *Standing Order Concerning Guidelines for Compensation and Expense Reimbursement of Professionals, for Early Disposition of Assets in Chapter 11 Cases, and for Motions and Orders Pertaining to Use of Cash Collateral and Post-Petition Financing*, and Section I. F. of the *Guidelines for Compensation and Expense Reimbursement of Professionals* ("Standing Order"), they will be entitled to collect the hundreds of thousands of dollars from the Debtor for defending against Debtor's objections to the fee application as set forth in the court's standing order on fee application procedures. Debtor does not believe that a standing order can be so broadly interpreted as to modify existing 5th Circuit law. See *Andrews & Kurth L.L.P. v. Family Snacks (In re ProSnax Distribs.)*, 157 F.3d 414 (5th Cir. 1998) and *Kaye v. Hughes & Luce, LLP*, 2007 U.S. Dist. LEXIS 50929, 48 Bankr. Ct. Dec. (LRP) 135 (N.D. Tex. July 13, 2007) which clearly require a showing of benefit to the estate. Debtor has acknowledged that the 5th Circuit may agree that state law standards for reasonableness of fees may be a proper consideration in a solvent estate but it seems unlikely that the 5th Circuit would conclude that a lower standard of conduct is to be afforded a solvent debtor than to an insolvent debtor. Indeed, much of the conduct of the Defendants about which Debtor complained

occurred while the outcome was in doubt and the payment of creditors' claims was uncertain.

Movants also mistakenly point to 11 USC §330 as a basis for recovering fees even though the other authorities cited by Movants are in conflict with that assertion. §330, which sets forth the mechanism and standards for analyzing applications for fees explicitly provides only for reimbursement for "preparation" of a fee application. §330(a)(6) cannot be read as a congressional authorization for payment of fees for defending a claim for fees. *In re Engman*, 389 B.R. 36, 46-48 (Bankr. W.D. MI 2008). While some courts have attempted to extrapolate some equitable right to recover fees if a fee objection is filed in bad faith, no court has read into §330 any explicit right. Neither this court, adopting a more subjective standard, In re *Teraforce Tech. Corp.,* 347 B.R. 838, 846 (Bankr. N.D. Tex. 2006), nor the court with which this court has agreed, *In re St. Rita's Assocs. Private Placement, L.P.*, 260 B.R. 650 (Bankr. WDNY 2001) finds an explicit right under §330. In *Teraforce* this court has ruled that is appropriate to award fees under much the same standard as for violations of FRCP 11. It is important to note the core holding of the *St. Rita* opinion:

&#9756;"The litigation of a fee dispute is an exercise to be distinguished from preparation of the underlying fee application. Fee applications in bankruptcy have no counterpart in most areas of legal practice. For this reason, no reasonably comparable experiences provide guidance in setting a proper standard for compensating such effort. As noted above, section 330(a)(6) fills this void, but only with respect to the preparation of fee applications. In contrast, fee disputes are common to all areas of legal practice. Thus, the standard in section 330(a)(3)(A)(E) has application. *HN6*&#9756;In bankruptcy, services rendered in connection with a fee dispute are to receive the same compensation as would be paid to skilled practitioners in a non-bankruptcy case. Outside the field of bankruptcy, when clients refuse to pay a disputed bill, attorneys must choose either to "write-off" the liability or to commence litigation for collection. [**6] In that litigation, the "American rule" applies. Each side generally assumes the cost of its own legal counsel. Because skilled practitioners outside bankruptcy would customarily receive no

compensation for the additional time spent on litigating a fee dispute, no further compensation is payable to [applicant] in the present instance." *St. Rita* at pg. 652.

*Teraforce* is not really as broad or different from St. Rita as Movants' contend and is not really authority for Movants' claims.

It must be noted that the *Teraforce* approach has been criticized, noting that it creates court-made legal standards that are not evenly applied to other applications for administrative claims and which should be created, if at all, by Congress. See the analysis in *In re Engman*, 389 B.R. 36, 46-48 (Bankr. W.D. MI) interpreting a Michigan rule similar to the Standing Order:

> "     LBR 9013-1 permits attorneys to be reasonably compensated from the estate for preparing and reviewing the application needed to support a fee award. *See also*, 11 U.S.C. § 330(a)(6). However, that is not the issue here. In fact, I am allowing without reduction the $ 1,739 Day & Sawdey has requested as compensation for the preparation of this application.
>
>      What is at [**25] issue is whether Day & Sawdey is also entitled to the fees it is requesting for addressing the various objections that were lodged with respect to its prior application. The courts are split. Some permit the recovery of fees associated with the defense of a fee application without qualification. *See, e.g.*, *In re Worldwide Direct, Inc.*, 334 B.R. 108, 111 (D. Del. 2005) (collecting cases). These courts, though, have not relied upon the Bankruptcy Code itself as authority for their position. Rather, [*47] they have focused on the policy underlying Congress' enactment of Section 330(a), that being that professionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparts. *Id.* They argue that a bankruptcy professional's net award would be unfairly diluted if he was not permitted to recover his fees associated with defending an application. They also argue that a prohibition against recovering such fees would encourage persons to file spurious objections in order to procure unwarranted fee reductions. *Id.*
>
>      These are certainly legitimate points. Nonetheless, they are not persuasive. For example, the concern about encouraging frivolous objections if defense fees are not [**26] awarded is counterbalanced by the opposite concern that the award of such fees would discourage valid objections out of fear that a prolonged defense will only cause further diminution of the estate through the award of even more fees. Indeed, the possibility of earning fees from defending an objection might encourage the unscrupulous professional to file meritless applications in order to further benefit when the inevitable objections are made. *Cf. Boldt v. Crake (In re Riverside-Linden, Inv. Co.)*, 945 F.2d 320, 323 (9th Cir. 1991).

Other courts have countered the risk of overreaching applicants by awarding additional fees only when the objection is overruled. *See, e.g., In re Teraforce Technology Corp.,* 347 B.R. 838, 867 (Bankr. N.D. Tex. 2006). Identifying the prevailing party, though, can be tricky in instances when the applicant is seeking reimbursement for a broad array of tasks and the objections are many. Moreover, such an approach raises a much more fundamental concern, for, as *Worldwide Direct* acknowledges, there is no specific authority to award such fees or, for that matter, to recognize exceptions. It is fair, then, to ask whether the judiciary should be filling this legislative [**27] void with its own ideas as to what is good policy. Congress is much better suited to make those decisions.

*HN13*⊕The remaining courts, which I now join, have simply refused to award any additional fees associated with defending an application. *See, e.g., In re Brous,* 370 B.R. 563, 572 (Bankr. S.D.N.Y. 2007) (collecting cases). Those courts rely upon the so-called "American Rule." That rule, of course, requires litigants to bear their own legal expenses in the absence of an agreement. *Worldwide Direct* in effect concludes that Congress jettisoned this time-honored maxim so as to ensure that bankruptcy professionals would fare the same as their non-bankruptcy counterparts in being compensated for their time. *Worldwide Direct* is certainly correct that professionals who do not practice bankruptcy law generally are not subjected to the same formalities regarding payment for services rendered. However, *Worldwide Direct* overlooks the fact that a non-bankruptcy professional must still submit his invoice for informal review and challenge by the client before payment and that even judicial intervention may be required if payment is refused. Indeed, considerable hours of time may be spent by a non-bankruptcy [**28] attorney explaining and justifying a bill without any hope of reimbursement for the same. Consequently, *Worldwide Direct's* conclusion that bankruptcy professionals are placed at a disadvantage if they are not reimbursed for their costs in defending a fee application does not ring true. If anything, it would appear that *Worldwide Direct's* suspension of the American Rule offers them a benefit that other professionals do not enjoy.

There is also the related question of why bankruptcy professionals should be treated differently than other persons with administrative [*48] claims against the estate. After all, nonprofessional administrative claims are also subject to objection. 11 U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses . . ."). Perhaps there is a good reason for ignoring the American Rule when professionals are involved but enforcing it with respect to other administrative claimants. Or perhaps there is a reason that the American Rule should be ignored with respect to all administrative claimants. However, if there is, it is better for Congress to articulate it though a statutory enactment than for the courts to speculate what it might be through [**29] a succession of opinions."

14

Movants' reliance is misplaced because, even assuming that "reasonableness of fees" under state law, rather than "benefit to the estate" under §330, is the proper measure, state law and ethical rules are further barrier to Movants' recovery.

> "When interpreting and enforcing attorney-client fee agreements, it is 'not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship.'" *Hoover Slovacek*, 206 S.W.3d at 560 (quoting *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 868 (Tex. 2000) (Gonzales, J., concurring and dissenting)). Paramount among those ethical considerations is the fiduciary obligation mandated by the professional nature of the attorney-client relationship. *See id.* at 561 (attorneys have a special responsibility to maintain the highest standards of conduct and fair dealing); *see also Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964) (attorney-client relationship is highly fiduciary in nature); *Dow Chemical Co. v. Benton*, 163 Tex. 477, 357 S.W.2d 565, 567 (1962) (attorneys are members of an ancient profession with unique privileges and corresponding responsibilities)." *Lee, et al v. Daniels & Daniels*, 2008 Tex. App. LEXIS 1023 at pgs. *13-14 (Tex. Civ. App. 4[th] Dist. – San Antonio 2008)

Movants have used the interim orders, each requested orally and without pleadings, to accomplish that which would be prohibited by Texas law and ethical rules, that is the withholding of the client's funds to force the client to give up his malpractice claim.:

> "The relationship between an attorney and client is a fiduciary [**4] one and their dealings are subject to the same scrutiny as a trustee and a cestui que trust. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1965). The Code of Professional Responsibility requires that an attorney promptly pay or deliver to the client all funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. XII, sec. 8 (Code of Professional Responsibility) DR 9-102(B) (1973). A breach of the duty under DR 9-102(B) gives rise to a cause of action sounding in tort, not an action for breach of the representation contract. *Nolan v. Foreman*, 665 F.2d 738, 743 (5th Cir. 1982) (applying Texas law). (pg. 400)" *Avila v. Havana Painting Co. Inc.*, 761 S.W.2d 398 (Tex. Civ. App.-14[th] Dist.-Houston 1988)

It is difficult to imagine the circumstances under which Movants could successfully contend that the client agreement would entitle them to hundreds of

thousands of dollars in fees for acting adversely to their client. Texas courts have rejected the tortured logic promoted by Movants:

"Indeed, Daniels sought reimbursement for all time spent in his efforts to terminate his attorney-client relationship with Cummings [*17] including time spent adversarial to his own client. None of that time was spent engaged in 'legal services' performed or rendered on behalf of Cummings, his client. *See Crain*, 11 S.W.3d at 333; *Brown*, 742 S.W.2d at 41. Instead, Daniels spent that time engaged in services performed for his own benefit. *See Scolaro v. State ex rel. Jones*, 1 S.W.3d 749, 756 (Tex. App.--Amarillo 1999, no pet.) (services rendered for one's own interest are not considered to be the practice of law by the State Bar of Texas). No lawyer could form a reasonable belief that time spent adversarial to the client and in pursuit of the lawyer's own interests is the rendering of 'legal services' for the client. Thus, no lawyer could form a reasonable belief that fees incident to such time spent were reasonable. Therefore, we hold the particular withdrawal provision at issue here, which because of its broad nature allows the recovery of such fees, is unconscionable and contravenes Texas public policy as a matter of law. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a) ('[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable')." *Lee*, above at pg. *16-17.

**B.    Defendants' Claims Pursuant to the DTPA Fail.**

Assuming arguendo that Defendants had properly plead a claim for affirmative relief under the DTPA, Defendants' claims wholly fail. The Defendants presented no evidence at trial to support a claim that Plaintiff's claims had no basis in fact or law, were groundless or brought for harassment. [Tex. Bus. Com. Code 17.50] Given that Defendants' claims were counterclaims, they bore the burden of proof on each element of their claims. *Thermalon Industries, Inc. v. The United States*, 51 Fed.Ct. 464 @472. Defendants wholly failed.

At no time did the Defendants ask Tim Frazin even basic questions about the reasons for the filing of his claims. Nor did they provide any expert testimony to support the requisites of a recovery. Therefore, this Court made no findings in its opinion that would support an award of attorneys' fees. Indeed, the closest the Court came was to

find as a matter of law that the exemptions for large dollar contracts applied here. To make that ruling the Court had to create new law and find that a contingency contract on an unknowable outcome met the dollar requirements for DTPA exemption. Surely, the need for the creation of new law eliminates any argument for groundlessness, bad faith or harassment.

Factually, the Court made no finding of a groundless, bad faith or harassing DTPA filing. Without such a factual finding, Defendants cannot prevail on their claim for fees. Simply prevailing on a DTPA claim is not a basis for fees, and the act makes no such proviso.

Factually, Defendants did not prove a bad faith filing. Throughout this litigation, Defendants have painted Shawn Frazin as a grand puppeteer who pulled the strings of this litigation. Yet, at every turn, Defendants sought to limit or exclude Shawn Frazin's testimony, to the point of refusing to depose him by telephone or by video conference. Defendants likewise opposed, and the Court agreed with them, to allowing Shawn Frazin to testify at trial. Defendants now want to infer a lack of good faith in the filing of the Plaintiff's claims by inference from other sources, principally Tim Frazin. Defendants cannot have it both ways. By refusing to allow Shawn Frazin's testimony on any front, the Defendants are hoisted on their own pit and regarding their unplead and unproved claims of what is essentially "bad faith." Having (and wanting) no direct evidence concerning the bases for various claims, Defendants seek to have the Court now infer what the Court has not found: that Plaintiff's claims under the DTPA were brought in bad faith. The simple truth is, no evidence for such a claim exists in the record by any witness.

To the contrary, record evidence supporting the DTPA claims does exist. For example, one DTPA claim was based upon the representation that Nina Cortell would be the lead lawyer on the case and that she had thoroughly reviewed the record on appeal. A cursory review of the billing records showed that Ms. Cortell spent less than two hours reviewing the record, according to her own time sheets. The Court, in its opinion p. 90, found that it was Ms. Cortell's explanation of those records that thwarted that claim, not the records themselves. Likewise, the Court found that another of Plaintiff's DTPA claims, misrepresenting the settlement terms and misleading the Court regarding them, actually occurred. Though the Court couched them in terms of breaches of fiduciary duty, the underlying factual bases, (that representations were made and reneged upon) were sustained when the Court found Defendants breached their fiduciary duties to Frazin regarding the settlement and fee reduction issues.

As Defendants (1) presented no direct evidence of bad faith, by expert testimony or otherwise, and (2) precluded the testimony of Shawn Frazin, and as the Court found certain improper actions plead by Frazin to have actually occurred and excused others by resort to testimony which expanded on and explained the actual billing statements of Haynes & Boone, attorneys' fees as a sanction are inappropriate under § 17.50(c) of the DTPA.

### D. Defendants' Claims Under Tex. Civ. Practice & Remedies Code Chapter 38 Fail.

The Court's memorandum opinion and pronouncement on the record at the last status conference hearing should have ended this issue. Despite both the Court's opinion

and the Court's undeniable denial on the record to any claim for breach of contract by the Defendants, Defendants persist in seeking fees under Tx.CPRC Chapter 38. If one set aside the Court's opinion, on the record pronouncement and the defective pleadings, Defendants' claims still fail.

To prevail under even a properly plead claim for attorneys' fees under TxCPRC Chapter 38.001, the Defendants must plead and prove:

1)  They had a contract with Frazin;

2)  They presented and demanded payment to Frazin;

3)  30 days passed since presentment, and no payment was made, and,

4)  They retained an attorney to pursue the claim.

    (See Tex.CPRC § 38.001 and 38.002.

Defendants efforts fail from the outset. Defendants cannot prove they have any contract for a set fee. Indeed, Defendants recognize and agree that any such contract required Court approval. While the Court granted Defendants' retention, it specifically reserved the issue of just compensation. Thus, Defendants' contracts are actually with the estate, as approved by the Court, and not with Tim Frazin. Therefore, Mr. Frazin cannot be liable for attorneys' fees for "breach" of any agreement.

Additionally, this Court has noted repeatedly throughout this litigation the unique limitations placed upon Plaintiff by the Fifth Circuit's pronouncement in *Intelogic Trace* and its progeny. Plaintiffs in a malpractice action have a Hobson's choice. Object to a fee application within days of a fee application or forever be barred from a claim. The situation is unlike any faced by any other would-be legal malpractice Plaintiff. Despite this, Defendants continue to urge that the standards for objecting are the same as for any

Plaintiff with a 2 year window in which to decide whether a malpractice action is warranted.

Regardless of these artificial constraints, Defendants have no legally nor factually cognizable claim to fees based upon 38.001 *et seq.* as Plaintiff was never and is not in charge of the determination and could not have breached contracts for fees which were never approved by the Court.

### E.    Defendants Claims on the Promissory Estoppel Claim Fails

Plaintiff had an expert who opined that G&N fell below the standard of care by failing to ask the question of Tim Frazin how the losses to Joseph M Frazin, the company, were his personally. (See expert report of Broadus Spivey). Because both Defendants G&N and H&B claim now they incorrectly argued to the court that such corporate losses were cognizable as damages under promissory estoppel, Plaintiff was critical of G&N's failure to ask the trial question, "Tim how were the corporate losses yours?"; and critical of the appellate team for not pointing out to the Court of Appeals the testimony of Frazin at trial that any such losses to J. M. Frazin were losses to him. Plaintiff originally believed the Defendants' legal arguments.

As Plaintiff explained at trial, with regard to the trial work of G&N, it was still Plaintiff's expert's (Spivey) opinion that the trial team was negligent. The problem for Plaintiff was that the damage model for the appropriate legal standard for promissory estoppels damages (not the one briefed by Defendants) equated to less than the damages awarded by the appellate court for quantum merit. In other words, if one believed the Defendant's briefing was done in good faith and consistent with the law, then the claim

of an improperly tried or briefed promissory estoppel claim existed as to all Defendants. However, if you applied the correct law, the negligence claims against each party still existed, but a damage model could not be created to exceed the value of the quantum merit claim awarded by the appellate court. This is not even close to a frivolous or bad faith claim. Neither can either a bad faith finding on this claim support an award for attorney's fees under breach of contract or D.T.P.A., as neither applies to this issue, which is purely an issue of negligence.

## V. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Tim Frazin respectfully prays that this Court deny Defendants' fee requests in their entirety.

Respectfully submitted,

MARTINEC, WINN, VICKERS & MCELROY, P.C.
600 Congress Avenue, Suite 500
Austin, TX 78701-2156
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com


GALOW & SMITH, P.C.
1204 Nueces Street
Austin, TX 78701
(512) 481-0200/FAX (512) 481-0250
jerry@galowlaw.com


By: _____//Jerry Galow_____
          Jerry Galow/Bar No. 07594400

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of the foregoing Plaintiff Frazin's Response to Defendants' Motion for Attorney Fees and Expenses, has been served on all counsel of record in this the adversary proceeding via email transmission and/or via the CM/ECF Electronic Filing System on this the 17th day of November, 2008, as follows:

Scott Griffith, Esq.
Anthony P. Jach
**Griffith Nixon Davison, P.C.**
Two Lincoln Centre
5420 LBJ Freeway, Suite 900
Dallas, Texas 75240
E-mail: sgriffith@gndlaw.com
tjach@gndlaw.com

Robin Phelan
Scott Everett
Haynes and Boone
901 Main Street, Ste. 3100
Dallas, Texas 75202
E-mails: Scott.Everett@haynesboone.com
Robin.Phelan@haynesboone.com

Nicole T. LeBoeuf
Shackelford, Melton & McKinley, LLP
3333 Lee Parkway
Tenth Floor
Dallas, Texas 75219
E-mail: nleboefu@shacklaw.net

Rosemary J. Zyne
Sherry Lane Place, Suite 1205
5926 Sherry Lane
Dallas, Texas 75225
Email: rzyne@cs.com

Office of the U.S. Trustee
1100 Commerce Street
Room 976
Dallas, Texas 75242
Via First Class Mail

Office of the Chapter 13 Trustee
Attn: Thopmas Dwain Powers

125 E. John Carpenter Freeway, Suite 1100
Irving, Texas 75062
Email: tpowers@dallasch13.com

Gary Schepps
Drawer 670804
Dallas, TX 75367-0804
Email: Legal@Schepps.net